# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RICKY DEAN MCFARLIN, | )<br>) |
| Plaintiff, | )<br>) 3:16-cv-00365-RCJ-VPC |
| vs. | )<br>) |
| DREW et al., | ) **ORDER**<br>) |
| Defendants. | )<br>) |

This is a prisoner civil rights complaint pursuant to 42 U.S.C. § 1983. The Court now screens the Complaint under 28 U.S.C. § 1915A.

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff has sued Defendants Correctional Officer Drew, Caseworker Irvin, Sergeant Clark, Lieutenant Hartman, and Correctional Officer Avila1 for events that occurred while Plaintiff was incarcerated at Northern Nevada Correctional Center ("NNCC"). (*See* Compl., ECF No. 1-1). Plaintiff alleges that on the morning of October 5, 2015, while working as a porter in Unit 7A, he approached Drew and asked if he could give a book to one of the inmates in the unit. (*Id.* 4). Drew responded by asking whether the inmate was a "Mex" or a "Buck," derogatory comments directed at the inmates he had eaten breakfast with that morning—a Hawaiian native and a Cuban native. (*Id.* at 3–4). Plaintiff replied, "I don't know what race he [is]." (*Id.*). Drew asked again, and Plaintiff responded in the same way. (*Id.* 4). Drew became angry and told him

1 of 10

he could not give the book to the inmate. (*Id.* at 3). About 30 minutes later, Drew called Plaintiff out of the janitorial closet, told Plaintiff where to stand, and asked again what Plaintiff was going to do with the book. (*Id.* 3–4). Plaintiff pointed toward an inmate and said he was going to give the book to that inmate. (*Id.*). Drew responded by grabbing Plaintiff's hand and throwing Plaintiff down. (*Id.*). Drew then charged Plaintiff with staff assault and placed him in administrative segregation. (*Id.*). Drew falsified the report of the incident by saying that Plaintiff backhanded him, elbowed him, used a mop against him, and attempted to hit him several times. (*Id.*). Defendant Clark reviewed video of the incident, concluded that Drew's report was "all lies," and dismissed the charges. (*Id.* 4). Yet Clark added charges of disobedience and hindrance of staff and would not let Plaintiff talk or defend himself. (*Id.* 2). While Plaintiff was in administrative segregation, Drew "tormented" him. (*Id.*). Plaintiff asked other staff for help and filed emergency grievances, but they were all denied. (*Id.* 4). Plaintiff spent 22 days in administrative segregation and "lost time." (*Id.* 3).

**II.     LEGAL STANDARDS**

District courts must screen cases in which a prisoner seeks redress from a governmental entity or its officers or employees. 28 U.S.C. § 1915A(a). A court must identify any cognizable claims and must dismiss claims that are frivolous, malicious, insufficiently pled, or directed against immune defendants. *See id.* § 1915A(b)(1)–(2). Pleading standards are governed by Rule 12(b)(6). *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). When a court dismisses a complaint upon screening, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

///

## III. ANALYSIS

### A. IFP Motion

The Court denies the Application to Proceed in Forma Pauperis (ECF No. 1) as moot because Plaintiff is no longer incarcerated. Plaintiff must file an application to proceed in forma pauperis by a non-prisoner within thirty (30) days from the date of this order or pay the full filing fee of $400.

### B. Complaint

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

#### 1. Count I - Due Process

"Prisoners may . . . claim the protections of the Due Process Clause [and] may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Still, because prisoners have already been convicted, "the full panoply of rights due a defendant in [criminal] proceedings does not apply. [Rather], there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* (citations omitted). When a prisoner faces disciplinary charges, prison officials must provide the prisoner with: (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See id.* at 563–70.

However, no *Wolff*-type due process protections apply unless the result of the hearing is a punishment that impairs a constitutionally cognizable liberty interest as defined in *Sandin v. Connor*, 515 U.S. 472 (1995). Under *Sandin*, segregation within prison does not in and of itself constitute a deprivation of a constitutionally cognizable liberty interest. *E.g.*, *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1997); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Although *Sandin* concerned administrative segregation, it applies with equal force to disciplinary segregation, because the State's motivation is not relevant to the antecedent inquiry: whether the result of the segregation deprives the prisoner of a constitutionally cognizable liberty interest. If the answer to that antecedent question is "no," then no procedures at all are constitutionally "due," and a due process claim necessarily fails. Just as a prison cannot avoid the strictures of the Due Process Clause simply by labeling segregation as "protective" or "administrative," a prisoner cannot invoke the Clause simply by characterizing segregation as "disciplinary" or "punitive." No matter how a prisoner's segregation (or other deprivation) is labeled by the prison or characterized by the prisoner, a court must examine the substance of the alleged deprivation and determine whether it constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" before it determines whether *Wolff*-type procedural protections apply. *Sandin*, 515 U.S. at 484.

Showing that a deprivation is "atypical" with respect to the hardships of ordinary prison life is difficult, because prison conditions are typically harsh. Prisoners are by definition segregated from the public at large, and they are typically segregated even from other prisoners for the vast majority of any given day, except for perhaps one other cell mate. Indeed, the Court of Appeals has noted that "it would be difficult (we do not say impossible) to make disciplinary segregation sufficiently more restrictive than the conditions of the general population . . . to count as an atypical and significant deprivation of liberty[.]" *Serrano v. Francis*, 345 F.3d 1071,

1078 (9th Cir. 2003) (Aldisert, J.) (quoting *Wagner v. Hanks*, 128 F.3d 1173, 1174 (7th Cir. 1997)) (alterations in original). A court in this Circuit looks at three factors under *Sandin*: "(1) whether the conditions of confinement mirrored those conditions imposed upon inmates in analogous discretionary confinement settings, namely administrative segregation and protective custody[;] (2) the duration and intensity of the conditions of confinement; and (3) whether the change in confinement would inevitably affect the duration of [the prisoner's] sentence." *See Chappell v. Mandeville*, 706 F.3d 1052, 1064–65 (9th Cir. 2013) (second alteration in original; internal quotation marks omitted). In other words, if the conditions in segregation are worse than those a prisoner will typically encounter in prison, the Court must still consider whether the conditions are extreme enough in nature and duration or whether they will necessarily affect the length of a prisoner's sentence. Segregation may lead to a cognizable deprivation of liberty, for example, if the conditions of segregation, although not in themselves harsh enough to implicate a cognizable liberty interest, result in the deprivation of some other interest particular to the aggrieved prisoner. *See Serrano*, 345 F.3d at 1074, 1078–79 (finding that segregation of a partially paralyzed plaintiff for almost three months to an area where he could not use the wheelchair he was permitted in the general population, such that he could not shower and had difficulty using the bathroom and the bed, implicated a cognizable liberty interest).

Plaintiff claims that Drew violated his Fourteenth Amendment rights by placing him into administrative segregation. However, the Complaint does not allege facts establishing a liberty interest in avoiding administrative segregation. Plaintiff alleges he spent 22 days in administrative segregation—time within limits found not to be an atypical and significant hardship by the Supreme Court. *See Richardson v. Runnels*, 594 F.3d 666, 68 (9th Cir. 2010) (citing *Sandin*, 515 U.S. at 475–76) (holding that 30 days of segregation does not implicate a liberty interest under the Due Process Clause)). Plaintiff does not otherwise allege any material

differences between the conditions in general population and administrative segregation. He alleges that he "lost time" due to being placed in segregation, but he does not allege how this could have occurred where he wasn't disciplined in connection with being placed into administrative segregation. In any case, there is no cognizable liberty interest in discretionary "good time" credit, *see, e.g.*, *Neal v. Hargrave*, 770 F. Supp. 553 (1991) (Reed, C.J.), and although there is a liberty interest in mandatory "good time" credit, a loss of such time is not actionable under § 1983 unless and until the discipline is vacated either directly via appeal or collaterally, e.g., via habeas corpus, *Edwards v. Balisok*, 520 U.S. 641, 645–48 (1997) (citing *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)).

Plaintiff also alleges that Drew falsified reports against him, and that Clark did not let him defend himself during his disciplinary hearing and added charges despite knowing that Plaintiff was innocent. However, all disciplinary charges were dismissed. Plaintiff does not allege that he suffered any harm as a result of the disciplinary hearing. Plaintiff has not stated a due process claim related to the disciplinary hearing.

Count I is dismissed, with leave to amend in part. Plaintiff may amend to allege the conditions of administrative segregation in order to support his due process claim against Drew, i.e., for putting him into administrative segregation without any hearing.

### 2. Count II - Cruel and Unusual Punishment

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The "deliberate indifference" standard contains conjunctive objective and subjective prongs. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a

"sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Id.* at 837.

Plaintiff alleges that Drew violated his Eighth Amendment rights by throwing him on the ground, falsifying the charges against him, charging him with staff assault, putting him into administrative segregation, and tormenting him while he was in administrative segregation. Drew's action in throwing Plaintiff to the ground is properly addressed in the context of Plaintiff's excessive force claim, *infra*. As to Plaintiff's time in administrative segregation, Plaintiff has not alleged any facts to support a claim that the conditions of confinement therein posed an excessive risk to his health or safety such that it violated his Eighth Amendment rights—indeed, as noted, *supra*, he has not even sufficiently alleged that the confinement was severe enough to implicate any liberty interest under the Due Process Clause. As to the allegedly false charge of staff assault, there is no constitutional right against being falsely accused of conduct which might result in the deprivation of a liberty interest; what is guaranteed is procedural due process at any hearing that results in cognizable harm. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *Harper v. Costa*, No. CIV S-07-2149, 2009 WL 1684599, at *2 (E.D. Cal. June 16, 2009), *aff'd*, 393 Fed. Appx. 488 (9th Cir. 2010). Because Plaintiff did not receive any discipline from the charges, the only potential harm caused by them was Plaintiff's temporary placement in administrative segregation. As Plaintiff has failed to allege that the conditions of confinement in administrative segregation violated the Eighth Amendment (or even implicated any liberty interest under the Due Process Clause), Plaintiff has failed to state a colorable claim that the alleged falsification of charges against him violated his Eighth Amendment rights.

Finally, Plaintiff alleges that Drew "tormented" him while he was in administrative segregation. Plaintiff does not explain in what way Drew allegedly tormented him. "[V]erbal

harassment generally does not violate the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996). Plaintiff's conclusory assertion that Drew tormented him fails to state a claim under the Eighth Amendment. For the same reasons, Plaintiff's assertions that Clark, Irvin, Hartman, and Avila failed to do anything when he told them Drew was tormenting him fail to state a claim. Accordingly, the court concludes that Plaintiff has failed to state an Eighth Amendment claim. Count II is dismissed, with leave to amend.

### 3. Count III - Excessive Force

The question of excessive force under the Eighth Amendment turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In determining whether the use of force was wanton and unnecessary, it may also be proper to consider factors such as the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9–10.

Plaintiff asserts that Drew used excessive force when he grabbed Plaintiff's hand and threw Plaintiff down when Plaintiff pointed to a cell in response to Drew's question. Plaintiff asserts that he did nothing to merit the use of any force. The court finds that Plaintiff has stated a claim against Drew for a violation of his Eighth Amendment right to be free from the use of excessive force. Plaintiff also alleges that he told defendants Clark, Irvin, Hartman, and Avila about the incident but they did nothing to help. A defendant is liable under § 1983 "only upon a

showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Because the alleged assault had already occurred, there is no way that these Defendants could have prevented the alleged violation from occurring. Accordingly, this allegation does not state any claim against Clark, Irvin, Hartman, and Avila.

### 4. Count IV – Deliberate Indifference

Plaintiff also alleges deliberate indifference under the Eighth Amendment based on Drew's actions. Count IV is duplicative of Plaintiff's other claims.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's Application to Proceed in Forma Pauperis (ECF No. 1) is DENIED as moot.

IT IS FURTHER ORDERED that the Clerk shall SEND Plaintiff Form AO 240 and any applicable instructions.

IT IS FURTHER ORDERED that, within twenty-eight (28) days of this order, Plaintiff shall either: (1) FILE a complete Form AO 240; or (2) PAY the full filing fee of $400. If Plaintiff fails to do either, the Court will dismiss this case with prejudice.

IT IS FURTHER ORDERED that the Clerk shall FILE the Complaint (ECF No. 1-1).

IT IS FURTHER ORDERED that Count III for excessive force SHALL PROCEED against Defendant Drew.

IT IS FURTHER ORDERED that Count II for cruel and unusual punishment and the portion of Count I alleging a due process violation against Drew for putting Plaintiff into administrative segregation are DISMISSED, with leave to amend.

IT IS FURTHER ORDERED that Count IV and the remaining portions of Count I are DISMISSED, without leave to amend.

IT IS FURTHER ORDERED that the docket shall be amended to reflect that Lt. Hartman and Correctional Officer Avila are named Defendants.

IT IS FURTHER ORDERED that Defendants Clark, Irvin, Hartman, and Avila are DISMISSED from this action.

IT IS FURTHER ORDERED that, if Plaintiff chooses to file an amended complaint, he must do so within twenty-eight (28) days from this order. The Court will screen the amended complaint in a separate screening order.

IT IS FURTHER ORDERED that, if Plaintiff chooses not to file an amended complaint, this action will proceed only on Count III against Defendant Drew.

IT IS SO ORDERED.

Dated: This 22nd day of May, 2017.

_____
ROBERT C. JONES
United States District Judge